## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **EQUITABLE FINANCIAL LIFE INSURANCE COMPANY,** | **Civil Action No. 23-966 (ZNQ) (TJB)** |
| **Plaintiff,** | |
| v. | **REPORT AND RECOMMENDATION** |
| **NICOLE DELIA., *et al.*** | |
| **Defendants.** | |

**BONGIOVANNI, United States Magistrate Judge**

This matter comes before the Court upon Defendant Joseph Iavarone's ("Iavarone") request to enforce the settlement reached on September 10, 2024 between him and Defendants Nicole Delia, Karen Marsh Toussaint, and Walter J. Maxim, III (collectively, "Delia, Toussaint, and Maxim"). (Docket Entry No. 54). The Court has reviewed Iavarone's request, as well as the proceedings that have taken place in this matter and the correspondence exchanged between the parties and the Court. For the reasons set forth more fully below, the Court finds that an enforceable settlement agreement was reached between Iavarone and Delia, Toussaint, and Maxim. As a result, the Court recommends that the District Court enforce said settlement.

### I.       Background and Procedural History

Equitable Financial Life Insurance Company ("Equitable") filed this interpleader matter on February 17, 2023. At issue are the proceeds from a life insurance policy (the "Policy") Equitable issued, which insured the decedent, Brian Marsh. A dispute arose concerning the proper beneficiary under the Policy, with Equitable receiving competing claims from Iavarone and Delia,

Toussaint, and Maxim. Since Equitable could not determine the proper beneficiary, it filed the instant action.

The Court conducted the Initial Pretrial Scheduling Conference on August 21, 2023. During same, the Court permitted Equitable to deposit the funds at issue with the Court. The Court also preserved Equitable's right to seek the reasonable attorneys' fees and costs it incurred in filing this interpleader action.[1] With respect to the competing beneficiaries' claims, the Court stayed discovery, informing Iavarone and Delia, Toussaint, and Maxim that it intended to focus on settlement.

The Court engaged in multiple settlement discussions with the parties. *See, e.g.,* Text Minute Entries of 11/27/2023, 2/8/2024, 6/6/2024, 6/27/2024, 9/10/2024. After meaningful discussions, on September 10, 2024, after independent *ex parte* settlement telephone conferences with counsel for Iavarone and counsel Delia, Toussaint, and Maxim, as well as their respective clients, followed by a joint telephonic settlement conference, an agreement was reached. The essential terms addressed the distribution of the insurance proceeds, and that the children's allotment would be held in a trust managed by a neutral trustee. Specifically, the parties agreed that of the $1,577,814.24 deposited with the Court, Iavarone would receive $600,000.00 with the remaining $977,814.24 (plus any further accrued interest) being placed in trust solely for the benefit of the decedent, Brian Marsh's, children. Further, the parties agreed that the trust would be structured so that (a) no money would be paid directly to the children's mother; (b) funds could be accessed to pay for fundamental expenditures for the children, such as education, therapy, a car, etc., but not for luxuries; (c) there would be no lump sum payment at age 18 for the children, rather

---

[1] The Court confirmed the preservation of Equitable's right to seek its reasonable attorneys' fees and costs when Equitable was dismissed from this matter without prejudice. *See* Text Order of 3/12/2024 (Docket Entry No. 30).

the monies held in trust would be distributed at various stages of the children's lives; and (d) the trust would be managed by an independent trustee; neither Iavarone nor Delia, Taussaint, and/or Maxim, or their respective counsel would act as trustee.

After the settlement was reached, counsel for Delia, Toussaint, and Maxim raised an issue regarding their fee, indicating that they would, in fact, be seeking attorneys' fees and costs in this matter. Iavarone objected to any of the Policy's funds being used to pay Delia, Toussaint, and Maxim's attorneys' fees and costs.  After further discussion with the parties, the Court advised Iavarone that he could file a motion to enforce the settlement. *See* Text Order of 11/4/2024; Docket Entry No. 53. Shortly thereafter, Iavarone submitted a letter to the Court seeking to enforce the settlement reached on September 10, 2024, and summarized in his attorney's email of September 18, 2024. (*See* Letter from Eric Dinnoncenzo, Esq. to Hon. Zahid N. Quraishi and Hon. Tonianne J. Bongiovanni of 11/6/2024; Docket Entry No. 54). The Court informed the parties that it would "address the pending request to enforce settlement[,]" noting that "[t]he case schedule and how to proceed shall be addressed after that request is decided" and prohibiting any motions from being filed "until after a decision on the request to enforce settlement is determined." Text Order of 11/20/2024; Docket Entry No. 55.

## II.    Legal Standard and Analysis

"The validity and enforceability of settlement agreements is governed by state contract law." *Shell's Disposal & Recycling, Inc. v. City of Lancaster*, 504 F. App'x 194, 200 (3d Cir. 2012) (citing *Am. Eagle Outfitters v. Lyle & Scott Ltd.,* 584 F.3d 575, 582 (3d Cir. 2009)).

Under New Jersey state law, "[a] contract arises from offer and acceptance, and must be sufficiently definite 'that the performance to be rendered by each party can be ascertained with reasonable certainty.'"  *Weichert Co. Realtors v. Ryan*, 128 N.J. 427, 435, 608 A.2d 280, 284

(1992) (citations omitted).  That is, "[i]f parties agree on essential terms and manifest an intention to be bound by those terms, they have created an enforceable contract."  *Id.* (citations omitted). "[T]here must be a meeting of the minds for an agreement to exist before enforcement is considered."  *Kernahan v. Home Warranty Adm'r of Fla., Inc.*, 236 N.J. 301, 319, 199 A.3d 766, 777 (2019) (citing *Johnson & Johnson v. Charmley Drug Co.,* 11 N.J. 526, 538, 95 A.2d 391 (1953).  A meeting of the minds, or mutual assent, requires that each party to the contract: (1) be "[f]airly informed of the contract's terms before entering into the agreement" (*Hoffman v. Supplements Togo Mgmt., LLC*, 419 N.J. Super. 596, 606, 18 A.3d 210, 216 (App. Div. 2011)); and (2) "[h]ave an understanding of the terms to which they have agreed," *Atalese v. U.S. Legal Servs. Grp., L.P.*, 219 N.J. 430, 442, 99 A.3d 306, 313 (2014).  "Objective manifestations of intent are controlling when determining if there is a meeting of the minds." *Castle Couture, LLC v. Azaria Bridal, LLC*, Civ. No. 17-6857, 2020 WL 5587449, at *2 (D.N.J. Sept. 18, 2020) (internal quotation marks and citations omitted).

"In New Jersey[,] there is a strong public policy in favor of settlements."  *Longo v. First Nat. Mortg. Sources*, 523 F. App'x 875, 878 (3d Cir. 2013) (citing *Nolan v. Lee Ho,* 120 N.J. 465, 577 A.2d 143, 146 (1990)). Consequently, courts "strain to give effect to the terms of a settlement wherever possible." *Dep't of Pub. Advocate v. N.J. Bd. of Pub. Util.*, 206 N.J. Super. 523, 528, 503 A.2d 331, 333 (App. Div. 1985). "However, courts will not enforce a settlement 'where there appears to have been an absence of mutuality of accord between the parties or their attorneys in some substantial particulars, or the stipulated agreement is incomplete in some of its material and essential terms.'" *Longo*, 523 F. App'x at 878 (quoting *Bistricer v. Bistricer,* 231 N.J.Super. 143, 555 A.2d 45, 47 (N.J. Super. Ct. Ch. Div. 1987) (internal quotation marks and citation omitted)). Nevertheless, "a contract is no less a contract because some preferable clauses may be omitted

either deliberately or by neglect.  So long as the basic essentials are sufficiently definite, any gaps left by the parties should not frustrate their intention to be bound." *Bistricer*, 231 N.J. Super. at 148.

Moreover, under New Jersey law, if "the parties orally agree on the essential terms," a contract is formed. *McDonnell v. Engine Distributors*, Civil Action No. 03-1999, 2007 WL 2814628, *3 (D.N.J. Sept. 24, 2007).  This is true "'even though [the parties] contemplate the later execution of a formal document to memorialize their undertaking.'" *Id.* (quoting *United States v. Lightman,* 988 F.Supp. 448, 459 (D.N.J. 1997).  As a result, "as long as those essential terms are agreed to, 'the settlement will be enforced notwithstanding the fact that a writing does not materialize because a party later reneges.'" *Id.* (quoting *Lahue v. Pio Costa*, 263 N.J. Super. 575, 596, 623 A.2d 775, 788 (N.J. Super. Ct. App. Div. 1993).

Based on these principles, the Court finds that the parties agreed to a valid and enforceable settlement agreement. The material terms of the settlement are: (1) of the $1,577,814.24 deposited with the Court, Iavarone would receive $600,000.00 and the remaining $977,814.24 (plus any further accrued interest) would be placed in a trust solely for the benefit of the decedent, Brian Marsh's, children; and (2) the trust would be structured so that (a) no money would be paid directly to the children's mother; (b) money could be accessed for fundamental expenditures, such as school, therapy, a car, but not for luxuries; (c) there would be no lump sum payment at age 18 for the children, rather the monies held in trust would be paid at various stages of the children's lives; and (d) the trust would be managed by an independent trustee; neither Iavarone nor Delia, Toussaint, and/or Maxim, or their respective counsel would act as trustee.[2] All parties agreed to

---

[2] While certain details concerning the trust still need to be fleshed out, those details are incidental to the material terms outlined above and do not render the parties' settlement agreement unenforceable. Indeed, "[c]ourts regularly hold that not every term needs to be agreed upon to

these material terms on September 10, 2024. The terms were memorialized in Mr. Dinnocenzo's email of September 18, 2024. (Docket Entry No. 54-1).

Only after the aforementioned material terms were agreed upon, did counsel for Delia, Toussaint, and Maxim raise the issue regarding their intention to seek to recoup their attorneys' fees and costs. (*See* Email from Joseph E. Mattia, Esq., to Hon. Tonianne J. Bongiovanni of 9/19/2024). Throughout the entirety of this case, and the Court's extended settlement discussions with the parties, Delia, Toussaint, and Maxim repeatedly confirmed that they were not seeking any portion of the Policy's funds for themselves or counsel. Further, counsel for Delia, Toussaint, and Maxim's investment proposal confirms that fees and costs would not be deducted from the children's allotment:

> My clients can accept $900,000 plus all applicable interest earned on policy proceeds as they have sat within the court's custody.
>
> My clients plan to have two managed investment accounts for each minor child, with $250,000 allocated into each account. These accounts would provide for a certain sum payout at 21, 26, 31, and 37.
>
> Moreover, my clients want to open two 529 accounts, one for each minor child. My clients will put $175,000 into each account for each boy. This is a tax advantage account for college expenses. This makes sure the boys will have the means to attend whatever university they desire.
>
> The remaining money (roughly $125,000 as we do not know the exact amount of interest added to the proceeds) but would be in a high interest savings account, or a money market fund. This will allow for the safekeeping of money that is extremely liquid.

---

have an enforceable agreement, only the material ones." *Newmark v. Am. Express Co*., Civ. No. 20-10241, 2022 WL 17340775, at *5 (D.N.J. Nov. 30, 2022).

(Email from Joseph Mattia, Esq., to Hon. Tonianne J. Bongiovanni of 7/9/2024). Additionally, counsel had previously stated that its "first concern is ensuring this money benefits Mr. Marsh's minor children" and that counsel's firm "would happily live with" a "no fee" scenario. (Email from Joseph E. Mattia, Esq., to Eric Dinnocenzo, Esq., of 7/25/2023, Docket Entry No. 51-1).

"A contracting party is bound by the apparent intention he or she outwardly manifests to the other party. It is immaterial that he or she has a different, secret intention from that outwardly manifested." *Brawer v. Brawer*, 329 N.J. Super. 273, 283, 747 A.2d 790, 796 (N.J. Super. Ct. App. Div. 2000) (internal quotation marks and citation omitted). As mentioned, "[o]bjective manifestations of intent are controlling when determining if there is a meeting of the minds." *Castle Couture,* 2020 WL 5587449, at *2 (internal quotation marks and citations omitted). Here, the parties objectively manifested their intent to agree to settle the case according to the material terms outlined above. While Delia, Toussaint, and Maxim may have intended to seek payment of their attorneys' fees and costs from the Policy's proceeds, they never outwardly shared said intent during the parties' settlement discussions. Instead, it was only after the parties reached the settlement discussed herein that the issue concerning payment of their attorneys' fees and costs was raised.

The inclusion of a provision for the payment of Delia, Toussaint, and Maxim's attorneys' fees and costs was not a term of the settlement reached by the parties. While payment of attorneys' fees and costs may, under different circumstance be deemed an essential term, here, it is not. Not only had counsel confirmed that the firm "would happily live with" a "no fee" scenario, but the suggested distribution to the children also confirmed that fees would not be deducted from the children's allotment.

The Court, therefore, finds that the settlement reached on September 10, 2024 should be enforced. With respect to the monies to be held in trust for the benefit of the decedent, Brian Marsh's, children, by **July 2, 2025**, the parties are directed to submit blind proposals regarding the investment and distribution of same. The Court shall select between the proposals submitted. The parties are reminded that neither Iavarone nor Delia, Toussaint, and/or Maxim, or their respective counsel may control the investment/distribution of said monies.

As the parties are aware, Equitable's right to seek reimbursement for its attorneys' fees and costs has been preserved from the outset of this litigation. As a result, prior to the disbursement of the Policy's funds, the Court finds that Equitable should be permitted to file an application for its reasonable attorneys' fees and costs.

### III.    Conclusion

The Court having considered the matter pursuant to L.Civ.R. 78.1(b) and for the reasons stated above;

IT IS on this **16th** day of **June**, 2025,

**RECOMMENDED** that Iavarone's request to enforce the settlement agreement reached on September 10, 2024, be **GRANTED**; and it is further

**RECOMMENDED** that Equitable be permitted to file an application for its reasonable attorneys' fees and costs prior to the disbursement of any of the Policy's funds; and it is further

**ORDERED** that the Clerk of the Court activate this Report and Recommendation; and it is further

**ORDERED** that pursuant to Fed. R. Civ. P. 72(b)(2) any party who has an objection to the proposed findings and recommendations set forth herein has **14 days** after being served with a copy of this Report and Recommendation to file specific written objections.

s/Tonianne J. Bongiovanni
**HONORABLE TONIANNE J. BONGIOVANNI**
**UNITED STATES MAGISTRATE JUDGE**